FORREST BOOTH (SBN 74166)
fbooth@nicollblack.com
CAMILLE ZUBER (SBN 349650)
czuber@nicollblack.com
NICOLL BLACK ALTENBRUN & FEIG
50 California St., Suite 1616
San Francisco, CA 94111
Telephone: (213) 752-1953
Facsimile: (408) 419-1875

Attorneys for Plaintiff
JARVIS INTERNATIONAL FREIGHT LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOURTHERN DIVISION**

JARVIS INTERNATIONAL FREIGHT LLC,

Plaintiff,

vs.

DAJABON CORPORATION, a California corporation; MEGATON INC., a California corporation, URENAS WATKINS, an individual, JUANA CRUZ, an individual, CHAO LI, an individual, and DOES 1-10, inclusive.

Defendants.

Case No. 8:26-cv-03048

**IN ADMIRALTY**

**COMPLAINT IN ADMIRALTY FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, INDEMNITY, CONTRIBUTION, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH, NEGLIGENCE, FRAUD AND UNFAIR BUSINESS PRACTICES**

COMES NOW Plaintiff JARVIS INTERNATIONAL FREIGHT LLC ("Plaintiff") by its attorneys Nicoll Black Altenbrun & Feig, and for its Complaint against Defendant DAJABON CORPORATION ("Dajabon"), Defendant URENAS WATKINS ("Watkins"), Defendant JUANA CRUZ ("Cruz"), Defendant CHAO LI ("Chao Li"), and Defendant described below MEGATON INC. ("Megaton") hereby alleges upon information and belief, as follows:

**PARTIES**

1. Plaintiff is a freight forwarder and licensed non-vessel operating common carrier ("NVOCC") providing ocean, air, trucking, and warehousing services. Plaintiff

is a corporation organized under the laws of the State of California, with its principal place of business at 400 Oyster Point Blvd., Ste. 526, South San Francisco, CA 94080.

2. Upon information and belief, Defendant Dajabon Corporation ("Dajabon") is a stock corporation organized under the laws of the State of California, with its principal place of business at 2255 Challenger Way #105 Santa Rosa, CA 95407. Upon information and belief, it is also an inactive Domestic Business Corporation under the New York Secretary of State, registered at 222 Main St, Westchester, NY, 10707.

3. Upon information and belief, Defendant Urenas Watkins ("Watkins") is an individual who incorporated Dajabon in California, as reflected in Dajabon's initial filing and its Articles of Incorporation filed on November 11, 2025. Upon information and belief, Watkins currently resides at 490 East 147th Street, Cleveland, Ohio 44110.

4. Upon information and belief, Defendant Juana Cruz ("Cruz") is an individual who serves as an assignee and representative of Dajabon in New York. Upon information and belief, Cruz currently resides at 434 Vyse Avenue, Bronx, New York 10459.

5. Upon information and belief, Defendant Megaton Inc. ("Megaton") is a stock corporation organized under the laws of the State of California, with its principal place of business at 20411 Via Guadalupe, Yorba Linda, California 92887.

6. Upon information and belief, Defendant Chao Li ("Chao Li") is an individual who serves as the principal, officer, and/or agent for service of process of Megaton, as reflected in Megaton's filings with the California Secretary of State. Upon information and belief, Chao Li's last known address is 20411 Via Guadalupe, Yorba Linda, California 92887, although, as alleged below, neither Chao Li nor Megaton could be located at that address.

7. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues those defendants by such fictitious names. Upon information and belief, DOES 1 through 10 include the U.S. customs broker engaged in connection with the goods at issue described below, the

importer of record, the Shipper, and any other persons or entities that owned, controlled, or acted on behalf of Dajabon or Megaton. Each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and Plaintiff's damages were proximately caused by their conduct. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained.

8. Upon information and belief, at all relevant times, each Defendant, including DOES 1 through 10, was the agent, servant, employer, employee, partner, alter ego, co-conspirator, and/or joint venturer of the unknown shipper, Dajabon and Megaton. In doing the things alleged herein, each of the above Defendant acted within the course and scope of that agency, employment, or relationship, and with the knowledge, consent, permission, authorization, and/or ratification of each of the other Defendants.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, which grants federal district courts jurisdiction over "any civil case of admiralty or maritime jurisdiction." This action arises from a dispute concerning a maritime shipment of goods and one or more bills of lading governing the ocean carriage of goods, which constitutes a maritime contract or contracts within the meaning of 28 U.S.C. § 1333. Plaintiff designates this claim as an admiralty or maritime claim pursuant to Federal Rule of Civil Procedure 9(h). This Court has supplemental jurisdiction over Plaintiff's related state-law claims, including its claim for fraud, pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the maritime claims that they form part of the same case or controversy.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendants' principal places of business are located within Orange County, California, which lies within the Central District of California.

## FACTUAL ALLEGATIONS

11. On or about April 28, 2026, Plaintiff entered into Combined Transport Bill of Lading No. J2604281057 (the "Bill of Lading") with Shipper Shenzhen Cuiran International Freight Forwarding Co., Ltd., No. 8 Building, Room 103, No. 8 Lane, Wanle Road, Western Industrial Zone, Shatou Community, Shajing Street, Bao'an District, Shenzhen City, China (the "Shipper"), and Consignee Dajabon.

12. The Bill of Lading governed the shipment of Container No. EMCU5483980 (the "Container"), allegedly containing 516 packages of frozen seafood/fish, aboard a vessel operated by Evergreen Line ("EGLV") from Nansha, Guangdong, China, to Long Beach, California (the "Shipment").

13. Under the terms of the Bill of Lading, Dajabon, as consignee, is contractually responsible to the carrier, including a NVOCC such as Plaintiff, for all freight, demurrage, customs-related charges, storage fees, and any other costs or ancillary expenses arising from the Shipment (collectively, "Freight and Charges").

14. On or about June 4, 2026, U.S. Customs and Border Protection ("CBP") placed the Shipment on hold because no customs entry had been filed by a U.S. customs broker. The consignee, Dajabon, the Shipper, Megaton, and/or their customs broker failed to timely file the required customs entry documentation. To this day, no entry has been filed.

15. To this day, Plaintiff does not know the identity of the designated U.S. customs broker. None of the Defendants has disclosed the identity of that customs broker to Plaintiff, despite being asked to do so.

16. As a result of the CBP hold, the Shipment was delayed for approximately four (4) months through no fault of Plaintiff.

17. Without *any* assistance from Defendants, Plaintiff explored and continues to explore every available avenue to mitigate the accruing charges with the Everport Terminal Services (Evergreen), at 389 Terminal Way, San Pedro, CA 90731 Terminal and Long Beach Container Terminal, at Pier F Ave, Long Beach, CA 90802.

18. Because Defendants failed to engage regarding the entry filing, and because re-exporting the Shipment to a port outside the United States was not feasible, Plaintiff requested that the Shipment be destroyed. After months of correspondence and negotiations with CBP officers, CBP approved the destruction.

19. The Bill of Lading described the contents of the Container as approximately 516 packages of frozen seafood. On or about September 9, 2026, however, it was discovered that the Container held approximately 500 pallets of goose products. Because the scheduled method of destruction was not appropriate for poultry, CBP declined to proceed with the destruction as originally scheduled. On or about September 16, 2026, the contents of the Container were destroyed at CBP's direction, employing a different destruction method, and at substantial cost to Plaintiff.

20. On or about July 16, 2026, Plaintiff served Dajabon with a demand letter, which went unanswered. Plaintiff attempted to serve the same demand on Megaton. However, Megaton's principal, Chao Li, could not be located because of a deficient registered address and a lack of available records, even though Megaton maintains a corporate presence in the State of California. Upon information and belief, Chao Li does not seem to exist at the address disclosed.

21. On or about October 2, 2026, Plaintiff sent updated demand letters reflecting the final charges to Dajabon at its New York corporate address; to Juana Cruz, Dajabon's representative in New York; to Urenas Watkins, Dajabon's incorporator in California; and to counsel for the parties in a New York lawsuit involving Dajabon. As of the date of this Complaint, Defendants have not paid any portion of the amounts due.

22. As a direct and proximate result of Dajabon's breach of the terms and conditions of the Bill of Lading, Plaintiff to date has incurred costs, fees, penalties and expenses (the "Freight and Charges") totaling **$107,692.26**. These charges accrued over the nearly four months that the Shipment remained subject to the CBP hold, from May 21, 2026, through the date of the destruction of the Container's contents on September 16, 2026, and consist of the following:

| Categories | Amount |
|---|---|
| Demurrage (May 21 – September 15, 2026) | $63,840.00 |
| Terminal dwell fees (May 21 – September 15, 2026) | $17,125.00 |
| Destruction fee and associated labor | $19,819.60 |
| Platform service fees | $4,453.08 |
| Drayage, chassis rental, reefer, bonded, pre-pull, and terminal waiting charges | $2,082.50 |
| Carrier administrative fee | $372.08 |
| **Total** | **$107,692.26** |

23. Demurrage and terminal dwell fees make up the largest share of these charges. They accrued daily while the Container sat at the terminal awaiting customs entry documentation that Dajabon, the Shipper, Megaton, and/or their customs broker failed to file. The destruction fee and associated labor costs were incurred when CBP approved the destruction of the Container's contents on or about September 16, 2026, as well as transportation costs. The remaining charges cover the drayage, chassis rental, reefer, bonded warehouse, and related handling costs needed to move the Container for destruction and return it, together with platform service fees, the transportation, and the ocean carrier's administrative fee. The invoice(s) itemizing these charges are attached hereto as **Exhibit B**.

24. None of these charges would have been incurred had the required customs entry documentation been timely filed by any of the Defendants.

25. Despite numerous demands, Dajabon has failed and refused to pay the Freight and Charges. Plaintiff is entitled to recover **$107,692.26**, together with any additional Freight and Charges that come due in connection with the Shipment's hold, destruction, and transportation, plus pre-judgment interest and attorneys' fees as provided under the Bill of Lading, under admiralty law and according to proof.

## ALTER EGO ALLEGATIONS

26. Upon information and belief, at all relevant times, there existed such a unity of interest and ownership between Dajabon, on the one hand, and Watkins, Cruz,

and DOES 1 through 10, on the other, that the separate personalities of the corporation and those individuals do not in reality appear to exist, and Dajabon is the alter ego of each of them.

27. Upon information and belief, at all relevant times, there likewise existed such a unity of interest and ownership between Megaton, on the one hand, and its principal, Chao Li, and DOES 1 through 10, on the other, that the separate personalities of the corporation and those individuals do not in reality appear to exist, and Megaton is the alter ego of each of them.

28. Plaintiff is informed and believes, and on that basis alleges, that the unity of interest and ownership described above is shown by, among other things, the following facts:

(a) Dajabon and Megaton do not operate from, maintain offices at, or receive correspondence at the principal office addresses they disclosed to the California Secretary of State, and have no verifiable place of business, telephone number, or business records in California;

(b) Dajabon was incorporated in California on or about November 11, 2025, roughly five months before the Shipment, by Watkins, an individual residing in Ohio, and its only known representatives, Watkins and Cruz, reside outside California. Dajabon is also registered in New York as an inactive domestic business corporation, and is identified by yet another address in a New York lawsuit;

(c) Dajabon and Megaton are inadequately capitalized for the business they purport to conduct, including the importation of perishable food products in commercial quantities as well as other goods such as furniture and electrical components, and have no assets in California sufficient to respond to the obligations they incur;

(d) Dajabon and Megaton have failed to observe corporate formalities, including by failing to maintain accurate and current filings with the

California Secretary of State, failing to maintain an agent for service of process who can be located at the designated address, failing to disclose accurate California Registered Corporate (1505) Agent Authorized Employee(s) as none are aware that Dajabon is their client, and failing to respond to any written demands sent to their registered addresses;

(e) Watkins, Cruz, Chao Li, and DOES 1 through 10 seemingly and likely dominated and controlled Dajabon and Megaton, commingled their own funds and business with those of the corporations, and used the corporations as mere shells, instrumentalities, and conduits for their own personal business of importing goods into the United States; and

(f) Dajabon and Megaton were used to procure goods and services, including the carriage, custody, storage, and handling of the Shipment by Plaintiff, while diverting the corresponding liabilities away from the individuals who controlled them, and to conceal the identity of the persons actually responsible for the Shipment, the cargo, and the customs entry.

29. Adherence to the fiction of the separate existence of Dajabon and Megaton as entities distinct from Watkins, Cruz, Chao Li, and DOES 1 through 10 would sanction fraud and promote injustice. Defendants used these corporations, with false addresses and no meaningful assets, to import misdescribed goods while shielding the responsible individuals from the Freight and Charges, fines, and other liabilities that resulted. If the corporate form is respected, Plaintiff will be left without a remedy for the losses Defendants caused, while the individuals who controlled the corporations retain the benefit of their misconduct.

30. Accordingly, Watkins, Cruz, and DOES 1 through 10 are jointly and severally liable for all obligations and liabilities of Dajabon alleged herein, including its obligations under the Bill of Lading, and Chao Li and DOES 1 through 10 are jointly and severally liable for all obligations and liabilities of Megaton alleged herein.

## FIRST CAUSE OF ACTION

**(Breach of Contract Against Dajabon, and Against Watkins, Cruz, and DOES 1 through 10 as Its Alter Egos)**

31. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

32. Plaintiff is an NVOCC that issued the Bill of Lading covering the Shipment. In issuing the Bill of Lading in its capacity as an NVOCC, Plaintiff assumed the contractual rights and obligations of an "Ocean Carrier" as that term is defined under Clause 1 of the Bill of Lading. A true and correct copy of the relevant terms and conditions of the Bill of Lading is attached hereto as **Exhibit A**.

33. Dajabon is the Consignee named on the Bill of Lading and, as such, constitutes a "Merchant" as that term is defined under Clause 1 of the Bill of Lading.

34. The Bill of Lading is a valid and binding contract between Plaintiff and Dajabon, among others, governing the terms and conditions of the ocean carriage of the Shipment.

35. Clause 24 of the B/L imposes broad and unconditional payment obligations on the Merchant parties, including Dajabon. Specifically, Clause 24(B) provides that full freight "shall be considered as completely earned on receipt of the Goods by the Ocean Carrier," and that the Ocean Carrier "shall be entitled to all freight and other charges due hereunder, whether actually paid or not . . . under any circumstances";

36. Clause 24(C) requires that "[t]he Payment of freight and/or charges shall be made in full and in cash without any offset, counter claim, or deduction";

37. Clause 24(F) provides that the Merchant "shall be liable for and shall indemnify the Ocean Carrier against . . . all fines, damages and losses sustained by the Ocean Carrier in connection with Goods, howsoever caused, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods"; and

38. Clause 24(H) provides that the consignee and other Merchant parties "shall be jointly and severally liable to the Ocean Carrier for the payment of all freight and charges and for the performance of the obligations of any of them under this Bill of Lading."

39. The customs hold giving rise to the Freight and Charges at issue was not caused by any act or omission of Plaintiff. Rather, it resulted from the failure of the responsible Merchant parties, including Dajabon, to timely file the required customs entry documentation with CBP or to otherwise cause such documentation to be filed. The submission of accurate and complete import entry information is the responsibility of the importer of record, consignee, shipper, or their designated customs broker – not an obligation Plaintiff in its capacity as an NVOCC.

40. As a direct and proximate result of Dajabon's failure to satisfy its obligations under Clauses 24(B), (C), (F), and (H) of the B/L (including its failure to timely file, or cause to be filed, the required customs entry documentation, and its failure to pay the resulting Freight and Charges), Plaintiff has incurred substantive demurrage, storage charges, customs-related fees, terminal fees, transportation fees, destruction fees and charges, and other ancillary costs and expenses in connection with the Shipment.

41. Dajabon has breached the Bill of Lading by failing and refusing to pay the Freight and Charges owed to Plaintiff, notwithstanding Plaintiff's timely demand for payment.

42. Watkins, Cruz, and DOES 1 through 10 are liable for Dajabon's breach of the Bill of Lading, jointly and severally with Dajabon, as Dajabon's alter egos, as alleged above.

43. As a direct and proximate result of Dajabon's breach, Plaintiff has been damaged in an amount totaling not less than $107,692.26 as of October 6, 2026, together with additional demurrage, storage charges, customs-related fees, terminal fees, transportation fees, destruction fees and charges, and other costs that were accrued up

until the Shipment is released, and the Container destroyed pursuant to CBP's request. All outstanding obligations appear to have been satisfied by Plaintiff. A true and correct copy of the invoice supporting these charges is attached hereto as **Exhibit B**. Plaintiff is entitled to be made whole and indemnified on account of the said breaches of contract by Defendants.

## SECOND CAUSE OF ACTION

**(Unjust Enrichment Against All Defendants)**

44. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

45. Plaintiff conferred a benefit upon Defendants by handling and maintaining custody of the Shipment, including incurring demurrage, storage, terminal, transportation fees, destructions fees and charges, and other related charges necessary to preserve the Shipment while it remained on CBP hold, as well as to complete its destruction.

46. Defendants have knowingly accepted and retained the benefit of Plaintiff's performance and ongoing efforts to maintain and preserve the Shipment, without providing the customs entry documentation necessary to secure its release, and without compensating Plaintiff for the resulting charges.

47. To the extent it is determined that Defendants are not bound by, or that their liability cannot be fully established under, the terms of the Bill of Lading, it would nonetheless be inequitable and unjust for Defendants to retain the benefit of Plaintiff's services and expenditures without compensating Plaintiff for the reasonable value thereof.

48. As a direct and proximate result of Defendants' failure to compensate Plaintiff, Defendants have been unjustly enriched at Plaintiff's expense in an amount to be proven at trial, but no less than $107,692.26 as of October 6, 2026, together with any additional charges continuing to accrue or which have already accrued. Plaintiff is entitled to be reimbursed and made whole for all said charges and expenses.

## THIRD CAUSE OF ACTION

**(Express Contractual Indemnity Against Dajabon, and Against Watkins, Cruz, and DOES 1 through 10 as Its Alter Egos)**

49. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

50. Pursuant to Clause 24(F) of the Bill of Lading, Dajabon, as Consignee and a Merchant party, expressly agreed to indemnify the Ocean Carrier (Plaintiff) against "all dues, duties, taxes, consular fees, and other charges levied on the Goods," as well as "all fines, damages and losses sustained by the Ocean Carrier in connection with the Goods, howsoever caused, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods."

51. The charges and losses sustained by Plaintiff, including demurrage, storage, terminal, transportation fees, destructions fees and charges, and customs-related fees, arose directly from the failure of the responsible party or parties to timely file the required customs entry documentation with CBP, and therefore fall squarely within the scope of Clause 24(F)'s contractual indemnification provision.

52. Clause 24(F)'s indemnity obligation is express and broad. It applies to losses "howsoever caused," and it specifically reaches losses arising from the Merchant's failure to comply with the laws and regulations of any public authority, including the customs and import laws administered by CBP. Clause 24(H) further makes Dajabon, as consignee, jointly and severally liable for the performance of the obligations of every other Merchant party under the Bill of Lading, including the Shipper.

53. Plaintiff has performed all conditions, covenants, and promises required of it under the Bill of Lading, except those excused or prevented by Defendants' conduct. Plaintiff tendered the Freight and Charges to Dajabon and demanded indemnity by letters dated July 16, 2026, and October 2, 2026. Dajabon has failed to indemnify Plaintiff.

54. As a direct and proximate result of Dajabon's failure to indemnify Plaintiff as required by Clauses 24(F) and 24(H) of the Bill of Lading, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $107,692.26 as of October 6, 2026, together with any additional sums Plaintiff has paid or may become obligated to pay in connection with the Shipment, and attorneys' fees and costs to the extent recoverable under the Bill of Lading and applicable law. Plaintiff is entitled to be reimbursed and made whole for all said charges and expenses.

## FOURTH CAUSE OF ACTION

**(Equitable Indemnity Against Megaton, Chao Li, and DOES 1 through 10)**

55. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

56. Plaintiff has no express contract with Megaton, and Megaton is not a party to the Bill of Lading. Plaintiff's claim against Megaton therefore does not arise from any contract, but from the equitable principle that a party whose fault caused a loss should bear that loss, rather than a party that was free from fault but was compelled to pay for it. This claim is pleaded in addition to, and not *in lieu* of, Plaintiff's express contractual indemnity claim against Dajabon.

57. On information and belief, Megaton was retained to act, or held itself out as acting, as the U.S. customs broker responsible for filing the required entry documentation in connection with the Shipment.

58. Upon information and belief, Megaton, as the customs broker responsible for filing the required entry, shared with Plaintiff a legal obligation to EGLV, Everport Terminal Services, Long Beach Container Terminal, and the other service providers identified above for the demurrage, terminal dwell, storage, destruction, drayage, and related charges that accrued while the Shipment remained on CBP hold, and to the owners of the cargo, for the consequences of the failure to file that entry, which was caused by Megaton's own acts and omissions.

59. Megaton failed to file the required customs entry, failed to pay the associated fees, failed to respond to Plaintiff's repeated inquiries, and failed to take any steps to cure the CBP hold or to assist with the release or destruction of the Shipment.

60. Jarvis has been unable to resolve this matter directly with Megaton notwithstanding its good-faith efforts to do so. On or about July 16, 2026, Jarvis attempted to serve Megaton with a Demand Letter; however, Megaton's principal, Chao Li, could not be located due to a deficient registered address and a lack of available records, despite Megaton maintaining a corporate presence in the State of California. Megaton's apparent unavailability has further deprived Plaintiff of any opportunity to resolve this matter without resort to litigation, underscoring the equity of requiring Megaton to indemnify Plaintiff for the losses caused by Megaton's own conduct.

61. Because the fault for the failure to timely file the required customs entry lies with Megaton and the other Defendants, equity and justice require that Megaton, Chao Li (as Megaton's alter ego), and DOES 1 through 10 indemnify Plaintiff in full for all charges, damages, losses, fees, penalties, costs, and expenses Plaintiff has paid or may be found liable for as a result of the CBP hold, the failure to timely secure release of the Shipment, and the destruction of the Container's contents. In the alternative, Plaintiff is entitled to partial equitable indemnity from Megaton, Chao Li, and DOES 1 through 10 in proportion to their comparative fault.

62. As a direct and proximate result of Megaton's failure to indemnify Plaintiff, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $107,692.26 as of October 6, 2026, together with any additional sums Plaintiff has paid or may become obligated to pay in connection with the Shipment. Plaintiff is entitled to be reimbursed and made whole for all said charges and expenses.

## FIFTH CAUSE OF ACTION

**(Contribution Against Dajabon, Megaton, Chao Li, and DOES 1 through 10)**

63. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

64. Plaintiff has paid EGLV, the terminal operators, and other third parties for, demurrage, terminal dwell, storage, destruction, transportation, customs-related, and other charges arising from the Shipment. To the extent any such charges, or any fines or penalties assessed by CBP or any other public authority, are found to be a common liability shared by Plaintiff and any Defendant, that liability was caused in whole or in part by the acts and omissions of Defendants, including Dajabon's and the other Merchant parties' failure to cause the required customs entry to be filed, Megaton's failure as customs broker to file it, and Defendants' misdescription of the cargo.

65. Under the general maritime law, a party that pays more than its fair share of a common liability is entitled to contribution from the other parties responsible for that liability, in proportion to their relative fault.

66. Plaintiff bears no fault for the CBP hold, the resulting charges, or the destruction of the Container's contents. Defendants should therefore bear the entire loss. In the alternative, each Defendant is obligated to contribute to Plaintiff in proportion to its share of fault for all sums Plaintiff has paid, or may hereafter be required to pay, in excess of its own share, if any.

67. As a direct and proximate result, Plaintiff is entitled to contribution from Dajabon, Megaton, Chao Li, and DOES 1 through 10 in an amount to be proven at trial, but no less than $107,692.26 as of October 6, 2026.

## SIXTH CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants)**

68. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

69. Implied in the Bill of Lading, and in any maritime agreement or undertaking pursuant to which Megaton was engaged to act as customs broker for the Shipment, is a covenant of good faith and fair dealing, obligating each party to refrain from conduct that would deprive the other party of the benefits of the agreement.

70. Plaintiff has repeatedly requested that Defendants disclose the identity of the customs broker engaged in connection with the Shipment, confirm whether Megaton was in fact retained as the customs broker, explain why the required customs entry had not been filed, confirm the steps being taken to cure the issue, and, if the entry had not yet been submitted, do so without further delay and provide an estimated timeline for release of the Shipment, as well as its destruction.

71. Despite these requests, Defendants have failed and refused to respond in good faith, have failed to disclose the identity or engagement details of the customs broker, have failed to confirm whether or when the required entry would be filed, and have otherwise failed to take reasonable steps to cooperate in securing the release of the Shipment and its destruction.

72. Defendants' silence, evasiveness, and failure to engage – despite Plaintiff's repeated, good-faith requests for basic information necessary to resolve the CBP hold – constitutes conduct that unfairly frustrates the purpose of the parties' agreement(s) and deprives Plaintiff of the benefits reasonably expected thereunder.

73. As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has sustained, and continues to sustain, damages in an amount to be proven at trial, but no less than $107,692.26 as of October 6, 2026.

Plaintiff is entitled to be made whole and indemnified on account of the said breaches by Defendants of the covenant of good fair and fair dealing.

**SEVENTH CAUSE OF ACTION**

**(Negligence Against Defendants Dajabon and Megaton)**

74. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

75. As the consignee of the Shipment, and upon information and belief its importer of record and ultimate purchaser, Dajabon owed Plaintiff, as the carrier of the Shipment, a duty to exercise reasonable care to ensure that the goods were accurately described in the shipping and customs documentation. It also owed a duty to disclose the true nature of the cargo, and to cause the required customs entry to be timely and accurately filed so that the Shipment could be lawfully released. Dajabon knew, or reasonably should have known, that a carrier relies on the declared description of the goods to handle, store, and dispose of them, and that misdescribing them would foreseeably cause the carrier to incur additional charges and losses.

76. Dajabon breached that duty by, among other things, causing or permitting the Container's contents to be described as approximately 516 packages of frozen seafood/fish when the Container in fact held approximately 500 pallets of goose products. Dajabon also failed to correct that misdescription or disclose the true nature of the goods to Plaintiff or CBP and failed to cause the required customs entry to be filed. Because the goods were misdescribed, CBP declined to proceed with the destruction as originally scheduled, and the Shipment had to be destroyed by a different method, at additional cost to Plaintiff and only after further delay.

77. Upon information and belief, Megaton was retained, engaged, or held itself out as the customs broker responsible for preparing and filing the required import entry documentation with CBP in connection with the Shipment. As the customs broker responsible for the Shipment, Megaton owed Plaintiff a duty of care to prepare and file the required customs entry documentation timely, accurately, and diligently; to pay the

associated fees; and otherwise, to take the steps reasonably necessary to secure or arrange the lawful release of the Shipment from CBP custody.

78. Megaton breached that duty by, among other things, failing to timely file the required entry documentation, failing to pay the associated fees, failing to communicate with Plaintiff or respond to its repeated inquiries regarding the status of the entry and the Shipment, and failing to take reasonable steps to cure the CBP hold or to assist with the destruction of the Container's contents, despite having been placed on notice of the issue.

79. As a direct and proximate result of Dajabon's and Megaton's negligent acts and omissions, the Shipment remained on CBP hold at the Everport Terminal in San Pedro for approximately four (4) months, and its destruction was delayed and made more costly. This caused Plaintiff to incur demurrage, terminal dwell, storage, transportation, and destruction charges, among other related charges.

80. As a further direct and proximate result of Dajabon's and Megaton's negligence, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $107,692.26 as of October 6, 2026, together with any additional charges that have accrued or may accrue. Dajabon and Megaton are jointly and severally liable for those damages. Plaintiff is entitled to be made whole and indemnified on account of the said breaches by Megaton and Dajabon.

## EIGHTH CAUSE OF ACTION

**(Fraud – Intentional Misrepresentation and Concealment, Cal. Civ. Code §§ 1709, 1710, Against Defendants)**

81. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

82. On or about November 11, 2025, Watkins, acting as incorporator and on behalf of Dajabon, filed Articles of Incorporation with the California Secretary of State representing that Dajabon's principal place of business was located at 2255 Challenger

Way, Ste. 105, Santa Rosa, California 95407 (the "Santa Rosa Address") and designated that address for service of process.

83. Upon information and belief, Megaton, acting through its principal, Chao Li, represented in its filings with the California Secretary of State that its principal place of business was located at 20411 Via Guadalupe, Yorba Linda, California 92887 (the "Yorba Linda Address" and designated that address for service of process.

84. Upon information and belief, both of these representations were false.

85. Upon information and belief, neither Dajabon nor Megaton have conducted business from, maintained an office at, or received correspondence at the Santa Rosa Address or the Yorba Linda Address. On or about July 16, 2026, Plaintiff sent a written demand for payment to Dajabon at the Santa Rosa Address, and Dajabon never responded. Although Dajabon was incorporated in California and represented that its principal place of business is in Santa Rosa, its only known (and alleged) representatives are seemingly located outside California: Watkins apparently resides in Cleveland, and Cruz apparently resides in the Bronx, New York. In a New York lawsuit, moreover, Dajabon is identified with a New York corporate address rather than the Santa Rosa Address.

86. Plaintiff likewise attempted to serve its July 16, 2026, demand on Megaton through its principal, Chao Li, at the Yorba Linda Address, but Mr. Li could not be located there. Despite Megaton's active corporate registration in California, Plaintiff has been unable to find any other business address, telephone number, or record of Megaton's operations. On or about October 2, 2026, Plaintiff sent updated demand letters to Dajabon at its New York corporate address, to Watkins in Ohio, to Cruz in New York, and to counsel for the parties in the New York lawsuit. As of the date of this Complaint, only plaintiff's counsel in the New York lawsuit responded to our correspondence, stating that it served Dajabon *via* the Secretary of State. None of the Defendants have responded or provided a valid California business address for Dajabon or Megaton.

87. Upon information and belief, Defendants, together with the Shipper, caused the contents of the Container to be described in the Bill of Lading as 516 packages of frozen seafood/fish, when Defendants knew that the Container in fact held approximately 500 pallets of goose products. This constituted an active and willful misrepresentation to U.S. Customs, and to Plaintiff.

88. Defendants also concealed and suppressed material facts that were exclusively within their knowledge and that Plaintiff could not reasonably discover, including the identity of the U.S. customs broker engaged for the Shipment, the true nature of the cargo, and the true business locations of Dajabon and Megaton. Defendants had a duty to disclose these facts because, among other things, they were parties to or beneficiaries of the Bill of Lading, the facts were known only to them, and their affirmative representations regarding Dajabon's and Megaton's addresses and the contents of the Container were misleading and without disclosure of the truth. Defendants continued to conceal these facts despite Plaintiff's written demands of July 16, 2026, and October 2, 2026.

89. Defendants knew that the foregoing representations were false when made or made them without any reasonable ground for believing them to be true and intentionally concealed the foregoing facts.

90. Defendants made these misrepresentations and concealed these facts with the intent to induce Plaintiff to accept the Shipment for carriage, to issue the Bill of Lading naming Dajabon as consignee, and to carry, hold, and handle the Shipment, while insulating Defendants from liability for the resulting Freight and Charges and frustrating Plaintiff's ability to locate, serve, and recover from them.

91. Plaintiff actually and justifiably relied on Defendants' representations and on the absence of the concealed facts. Among other things, Plaintiff accepted the Shipment and issued the Bill of Lading identifying Dajabon as consignee; carried the Shipment to Long Beach and held it pending entry; scheduled destruction based on the declared contents of the Container; and directed its demands for payment to Defendants

at their represented addresses. Plaintiff's reliance was reasonable because the addresses were drawn from public filings made with the California Secretary of State and from shipping documents on which carriers ordinarily rely. Had Plaintiff known the truth, it would not have accepted the Shipment.

92. Watkins, Cruz, and Chao Li are individually liable because each personally participated in, authorized, or directed the tortious conduct alleged herein. Watkins personally prepared, signed, and filed Dajabon's formation documents containing the false Santa Rosa Address. Both, upon information and belief, were or are representatives for Dajabon, a fictious corporation that does not seem to exist and is falsely declared as active. Upon information and belief, each Defendant acted as the agent of the others and in concert with them in committing the fraudulent acts alleged herein. Chao Li, as Megaton's principal, personally caused Megaton's filings containing the false Yorba Linda Address to be made and maintained, and personally failed to respond to, or to make himself or herself available for, Plaintiff's demands.

93. As a direct and proximate result of Defendants' fraud, Plaintiff has been damaged in an amount to be proven at trial, but no less than $107,692.26, including the Freight and Charges incurred while the Shipment remained on CBP hold, the additional costs incurred when the scheduled destruction could not proceed because of the misdescribed cargo, the destruction of the goods and the Container itself, and the costs Plaintiff incurred attempting to locate Defendants.

94. In doing the things alleged herein, Defendants acted with oppression, fraud, and malice within the meaning of California Civil Code section 3294, including intentional misrepresentation, deceit, and concealment of material facts known to Defendants with the intention of depriving Plaintiff of property or legal rights or otherwise causing injury, and with a willful and conscious disregard of Plaintiff's rights. The conduct of Dajabon and Megaton was committed, authorized, or ratified by their officers, directors, or managing agents, including Watkins, Cruz, and Chao Li. Plaintiff is therefore entitled to an award of compensatory damages, as well as punitive and

exemplary damages in an amount sufficient to punish Defendants and deter similar conduct. Plaintiff is entitled to be made whole and indemnified on account of the said intentional misrepresentations and concealments by Defendants.

**NINTH CAUSE OF ACTION**

**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., Against All Defendants)**

95. Plaintiff realleges and incorporates by reference each and every averment set forth in the preceding paragraphs as though fully set forth herein.

96. California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200 *et seq*., prohibits "any unlawful, unfair or fraudulent business act or practice." Each of these three prongs is independent, and a business act or practice that satisfies any one of them is actionable.

97. Each Defendant is a "person" within the meaning of Business and Professions Code section 17201. Dajabon and Megaton are California corporations that hold themselves out as having their principal places of business in California, and the acts and practices alleged herein were committed in the course of Defendants' business of importing products into the United States through the Ports of Long Beach and Los Angeles.

98. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' unfair competition within the meaning of Business and Professions Code section 17204. Among other things, Plaintiff has paid, or become obligated to pay, no less than $107,692.26 in demurrage, terminal dwell, destruction, transportation, and related charges that would not have been incurred but for Defendants' unlawful, unfair, and fraudulent conduct, and Plaintiff has expended additional sums attempting to locate Defendants and to mitigate its losses.

99. Defendants engaged in "unlawful" business acts and practices by violating, among other laws, the following statutes and regulations, each of which serves as an independent predicate for liability under the UCL:

(a) Defendants failed to make, or to cause to be made, entry of the Shipment as required of the consignee, importer of record, and their customs broker under 19 U.S.C. § 1484 and 19 C.F.R. Part 142, leaving the Shipment unentered, subject to CBP hold, and ultimately subject to destruction.

(b) Upon information and belief, Defendants introduced, or attempted to introduce, the Shipment into the commerce of the U.S. by means of material false statements and omissions regarding the nature of the goods, describing approximately 500 pallets of goose products as frozen seafood/fish, in violation of 19 U.S.C. § 1592 and 18 U.S.C. § 542.

(c) Upon information and belief, Defendants attempted to import poultry products under a false description in order to evade the inspection, eligibility, and certification requirements applicable to imported poultry under the Poultry Products Inspection Act, 21 U.S.C. § 466, and 9 C.F.R. Part 381, Subpart T, and the animal-health import restrictions administered by the Animal and Plant Health Inspection Service under 9 C.F.R. Part 94.

(d) Upon information and belief, to the extent Megaton transacted customs business on behalf of Dajabon or any other Defendant in connection with the Shipment, it appears that it did so without the license required by 19 U.S.C. § 1641(b).

(e) Dajabon and Megaton, acting through Watkins, Chao Li, and others, filed and continue to maintain with the California Secretary of State Articles of Incorporation and Statements of Information that misrepresent their principal office addresses and addresses for service of process, contrary to Corporations Code sections 202 and 1502, and, upon information and belief, knowingly caused false instruments to be filed in a public office in violation of Penal Code section 115.

(f) Defendants engaged in intentional misrepresentation, concealment, and deceit in violation of Civil Code sections 1572, 1709, and 1710, as alleged in the Eighth Cause of Action.

100. Independently of any statutory violation, Defendants' conduct is "unfair" within the meaning of the UCL. Defendants used California corporations with false or unverifiable addresses to import goods while shifting the costs of their own regulatory noncompliance onto an innocent carrier; misdescribed the cargo; refused to identify the customs broker or importer of record; and ignored repeated written demands, leaving Plaintiff to bear the full cost of the CBP hold and destruction. This conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff and to other carriers, terminal operators, and members of the trade who rely on accurate shipping documents and corporate records. The harm caused by Defendants' conduct greatly outweighs any conceivable utility, and Plaintiff could not reasonably have avoided it. Defendants' conduct also offends the public policies embodied in, and is tethered to, the customs, food-safety, animal-health, and corporate-disclosure laws identified above, which exist to protect the integrity of the nation's borders and food supply and to ensure that businesses operating in California can be located and held accountable.

101. Defendants' conduct is also "fraudulent" within the meaning of the UCL because it is likely to deceive members of the public. Carriers, terminal operators, creditors, process servers, courts, and government agencies rely on the addresses that corporations disclose to the California Secretary of State, and on the cargo descriptions that shippers and consignees provide in shipping documents. Defendants' false addresses and false cargo description were likely to deceive, and did deceive, those who relied on them, including Plaintiff, which actually and reasonably relied on them as alleged in the Eighth Cause of Action.

102. Upon information and belief, Defendants' unfair competition is continuing. Dajabon and Megaton remain registered with the California Secretary of State at addresses from which they do not operate. Unless enjoined, Defendants are

likely to continue to import goods through California or U.S. ports under false descriptions and through untraceable entities, causing further harm to Plaintiff and to the public.

103. Watkins, Cruz, Chao Li, and DOES 1 through 10 are personally liable under the UCL because each personally participated in, directed, authorized, or had knowledge of and the ability to control the unlawful, unfair, and fraudulent acts and practices alleged herein.

104. Pursuant to Business and Professions Code section 17203, Plaintiff is entitled to restitution of all money and property, or the value thereof, that Defendants acquired or retained by means of their unfair competition, including the value of the carriage, custody, storage, handling, and disposal of the Shipment that Plaintiff provided and paid for on Defendants' behalf, and the Freight and Charges that Defendants were obligated to pay but did not.

105. Pursuant to Business and Professions Code section 17203, Plaintiff is further entitled to an injunction (a) requiring Dajabon and Megaton to correct their filings with the California Secretary of State to disclose their true principal office addresses and addresses for service of process; (b) requiring Defendants to disclose to Plaintiff the identity of the customs broker and importer of record for the Shipment; and (c) enjoining Defendants from consigning, importing, or causing the importation of goods through California or U.S. ports under false cargo descriptions or without a duly licensed customs broker making entry.

106. This action is timely under Business and Professions Code section 17208.

107. Plaintiff is entitled to be made whole and indemnified on account of the said unfair business competition by Defendants.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

1. For compensatory damages against Dajabon, and its alter egos Watkins and Cruz, for breach of contract, in an amount to be proven at trial, but no less than $107,692.26, together with additional demurrage, storage, customs-related, terminal, and other charges continuing to accrue;
2. For damages against Dajabon and Megaton for unjust enrichment, in an amount equal to the reasonable value of the benefit conferred upon and retained by Defendants, to be proven at trial;
3. For express contractual indemnity from Dajabon, and from Watkins, Cruz, and DOES 1 through 10 as its alter egos, pursuant to Clauses 24(F) and 24(H) of the Bill of Lading, for all charges, damages, losses, fees, penalties, costs, and expenses Plaintiff has incurred as a result of the CBP hold, the failure to timely secure release of the Shipment, and the destruction of its contents, in an amount to be proven at trial, but no less than $107,692.26;
4. For equitable indemnity from Megaton, Chao Li, and DOES 1 through 10, in full or, in the alternative, in proportion to their comparative fault, for all such charges, damages, losses, fees, penalties, costs, and expenses, in an amount to be proven at trial, but no less than $107,692.26;
5. For contribution from Dajabon, Megaton, Chao Li, and DOES 1 through 10, in proportion to their respective fault, for all sums Plaintiff has paid in an amount to be proven at trial, but no less than $107,692.26;
6. For damages against Dajabon and Megaton for breach of the implied covenant of good faith and fair dealing, in an amount to be proven at trial;
7. For compensatory damages against Megaton for negligence in an amount to be proven at trial, but no less than $107,692.26, together with additional demurrage, storage, customs-related, terminal, destruction and other charges continuing to accrue;

8. For compensatory damages against all Defendants, jointly and severally, for fraud, in an amount to be proven at trial, but no less than $107,692.26;

9. For punitive and exemplary damages against all Defendants pursuant to California Civil Code section 3294, in an amount sufficient to punish Defendants and deter similar conduct, to be determined at trial;

10. For restitution under Business and Professions Code section 17203 of all money and property, or the value thereof, that Defendants acquired or retained by means of their unfair competition, in an amount to be proven at trial;

11. For preliminary and permanent injunctive relief under Business and Professions Code section 17203 requiring Dajabon and Megaton to correct their filings with the California Secretary of State, requiring Defendants to disclose the identity of the customs broker and importer of record for the Shipment, and enjoining Defendants from importing or causing the importation of goods through California or U.S. ports under false cargo descriptions or without a duly licensed customs broker making entry;

12. For all continuing and additional demurrage, storage, terminal, destruction, transportation, customs-related, and other ancillary charges that might still be outstanding;

13. For pre-judgment and post-judgment interest at the maximum rate allowable by law;

14. For attorney's fees and costs of suit incurred herein, to the extent recoverable under the Bill of Lading and any and all other applicable law;

///

///

///

///

///

15. For such other and further relief as the Court deems just and proper.

DATED: October 16, 2026

NICOLL BLACK ALTENBRUN & FEIG

By: /s/ *Camille Zuber*
FORREST BOOTH
CAMILLE ZUBER

Attorneys for Plaintiff JARVIS INTERNATIONAL FREIGHT LLC